14-3743-cv(L)
Vera v. Republic of Cuba

# In the
# United States Court of Appeals
## For the Second Circuit

---

August Term, 2015

(Argued: August 18, 2015                    Decided: September 8, 2015)

Docket Nos. 14-3743-cv(L); 15-1154-cv(Con)

---

ALDO VERA, JR.,
as Personal Representative of the Estate of Aldo Vera, Sr.,

*Plaintiff-Appellee,*

—v.—

THE REPUBLIC OF CUBA,

*Defendant,*

BANCO BILBAO VIZCAYA ARGENTARIA, S.A.,

*Appellant.*

---

Before:

CABRANES, RAGGI, and WESLEY, *Circuit Judges.*

---

1

On appeal from orders entered in the Southern District of New York (Hellerstein, *J.*) (1) enforcing an information subpoena against a third-party foreign bank in connection with plaintiff's ongoing efforts to enforce a money judgment against the Republic of Cuba, and (2) denying reconsideration, the bank moves for a stay pending appeal. We deny the motion as moot because the challenged decisions are not appealable final orders, and, therefore, we lack appellate jurisdiction in this matter.

APPEALS DISMISSED.

---

KENNETH A. CARUSO (Kelly A. Bonner, Harold W. Williford, *on the brief*), White & Case LLP, New York, New York, *for Appellant*.

JEFFREY E. GLEN, Anderson Kill P.C., New York, New York (Robert A. Swift, Kohn, Swift & Graf, P.C., Philadelphia, Pennsylvania, *on the brief*), *for Plaintiff-Appellee.*

---

REENA RAGGI, *Circuit Judge*:

Third-party defendant Banco Bilbao Vizcaya Argentaria, S.A. ("BBVA"), a Spanish bank, appeals from orders entered in the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*) on September 10, 2014, and March 17, 2015. The first order directs BBVA to comply with an

information subpoena issued in connection with plaintiff Aldo Vera, Jr.'s attempt to enforce a $49 million default judgment against the Republic of Cuba; the second order denies reconsideration of the first. BBVA now moves this court for a stay of the district court's enforcement order pending resolution of these appeals. Vera, Jr., opposes a stay, arguing, <u>inter alia</u>, that this court is without jurisdiction because the appealed decisions are not final orders under 28 U.S.C. § 1291. We agree and, therefore, dismiss the appeals for lack of jurisdiction and deny the stay motion as moot.

## I.    <u>Background</u>

### A.    <u>The Florida Default Judgment</u>

In 2001, Aldo Vera, Jr., acting as representative of his father Aldo Vera, Sr.'s estate, invoked the terrorism-exception provision of the Foreign Sovereign Immunities Act ("FSIA") to sue the Republic of Cuba in Florida state court for money damages resulting from his father's 1976 murder in San Juan, Puerto Rico. <u>See</u> 28 U.S.C. § 1605(a)(7); Final Judgment at 1–4, <u>Vera v. Republic of Cuba</u>, No. 01-31216 (Fla. Cir. Ct. May 15, 2008) (construing FSIA terrorism exception to

allow money-damages action against foreign state for extrajudicial killing).[1]

Vera, Jr., alleged that his father—formerly Havana's Chief of Police—fled Cuba after becoming disillusioned with the Communist regime, residing thereafter in Florida and Puerto Rico, where he participated in counter-revolutionary activities. Final Judgment at 5, Vera v. Republic of Cuba, No. 01-31216 (Fla. Cir. Ct. May 15, 2008). On October 25, 1976, as Vera, Sr., was emerging from a political meeting in San Juan, he was shot dead, allegedly by agents acting on orders of the Cuban government. See id. While BBVA disputes this account, that issue is not before us.[2] Cuba failed to appear in the Florida action, and, in 2008, after holding a bench trial, the state court entered a default judgment in Vera, Jr.'s favor for $95,579,591.22. See id. at 1–3, 9–10; see also 28 U.S.C. § 1608(e) (requiring FSIA plaintiff to "establish[] his claim or right to relief by

---

[1] Section 1605(a)(7) has since been replaced by 28 U.S.C. § 1605A. Applicable federal law defines an "extrajudicial killing" as "a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples. . . ." Torture Victim Protection Act of 1991, Pub. L. No. 102-256, § 3(a), 106 Stat. 73, 73 (1992) (codified at 28 U.S.C.A. § 1350 Note); see 28 U.S.C. § 1605(e)(1) (repealed) (incorporating above definition); id. § 1605A(h)(7) (same).

[2] BBVA points to investigative and news reports attributing Vera, Sr.'s death to criminal rather than political activities. See, e.g., J.A. 324, 332.

4

evidence satisfactory to the court" before entry of default judgment against foreign state).

B. Entry of the Florida Judgment in the Southern District of New York and Ensuing Collection Proceedings

In 2012, Vera, Jr., again on behalf of his father's estate, filed suit against the Republic of Cuba in the Southern District of New York seeking entry of the Florida judgment under the Full Faith and Credit Act, 28 U.S.C. § 1738. See Vera v. Republic of Cuba, No. 12 Civ. 1596 (AKH) (S.D.N.Y.) (hereinafter "Vera v. Republic of Cuba"). After Cuba failed to appear in this action, the district court, by default, entered the Florida judgment on August 20, 2012, in the amount of $49,346,713.22, not recognizing that part of the judgment awarding $50 million in punitive damages. See 28 U.S.C. § 1606 (prohibiting award of punitive damages against foreign state); Judgment, Vera v. Republic of Cuba, S.D.N.Y. ECF No. 12. Two months later, on October 11, 2012, the district court authorized Vera, Jr., to pursue attachment and execution on the judgment. See 28 U.S.C. § 1610(c) (requiring "reasonable period of time" after entry of judgment before attachment of foreign state's assets permitted).

Toward that end, Vera, Jr., issued subpoenas to the New York branches of various banks, seeking to discover assets that Cuba held at those banks. See Fed.

5

R. Civ. P. 69(a)(2); N.Y. C.P.L.R. § 5224(a). The subpoena challenged on this appeal was directed to BBVA's New York branch and sought disclosure of all of Cuba's sovereign assets held by BBVA worldwide. BBVA responded by identifying Cuba's sovereign assets at its New York branch, but it provided no information about any of Cuba's assets that the bank may hold abroad.

On November 13, 2013, Vera, Jr., moved to compel BBVA's compliance with the subpoena's request for disclosure of Cuba's worldwide assets. On December 6, 2013, BBVA cross-moved to quash the subpoena, arguing that (1) the subpoena was void ab initio because the FSIA did not support jurisdiction for Vera, Jr.'s actions against Cuba; and (2) under Daimler AG v. Bauman, 134 S. Ct. 746 (2014), BBVA was not subject to personal jurisdiction in New York with respect to assets held abroad.

Meanwhile, starting in February 2013 and for some time thereafter, Vera, Jr., filed motions in the district court for orders directing various banks to turn over identified Cuban sovereign assets held at the banks' New York branches. A number of banks objected, maintaining that Vera, Jr., had to proceed against them by "special proceeding" pursuant to N.Y. C.P.L.R. § 5225(b) rather than by motion. See Fed. R. Civ. P. 69(a)(1) (requiring judgment enforcement

proceedings to comport with "procedure of the state where the court is located").[3]  On June 25, 2013, the district court orally directed Vera, Jr., to file and serve a formal pleading for turnover naming the banks as defendants.  The court explained that this action (1) ensured its jurisdiction to order the banks to turn over Cuba's assets, see Koehler v. Bank of Bermuda Ltd., 12 N.Y.3d 533, 540–41, 883 N.Y.S.2d 763, 768–69 (2009) (explaining that use of special proceeding ensures jurisdiction to order third party to turn over assets); and (2) allowed the

---

[3] The requirement that execution procedures comport with those of the state where the district court is located yields when a federal statute or the Federal Rules of Civil Procedure otherwise govern.  See Fed. R. Civ. P. 69(a)(1); Schneider v. Nat'l R.R. Passenger Corp., 72 F.3d 17, 19–20 (2d Cir. 1995).  This court has not spoken in a published opinion to how a party in federal court in New York satisfies the "special proceeding" requirements of N.Y. C.P.L.R. § 5225(b) given that the Federal Rules of Civil Procedure recognize only "one form of action—the civil action."  Fed. R. Civ. P. 2; see generally Saregama India, Ltd. v. Mosley, Nos. 12-MC-45-P1, 11-MC-84-P1 (LAK), 2012 WL 955520, at *1 (S.D.N.Y. Mar. 20, 2012) (citing Rule 2 in observing that "special proceedings in the sense used in the CPLR are unknown in federal courts").  We need not do so on this appeal.  We note, however, that we have summarily indicated that the filing requirements of a "special proceeding" under New York law need not be strictly adhered to as long as there is no prejudice to the opposing party in giving notice of the claims and framing the issues.  See Cordius Trust v. Kummerfeld, 153 F. App'x 761, 763 (2d Cir. 2005) (summary order) (excusing failure to denominate document a "petition" as required in New York special proceedings).  Moreover, we have noted that the standards governing N.Y. C.P.L.R. § 5225(b) special proceedings are similar to those applicable to summary judgment motion practice in federal courts.  See HBE Leasing Corp. v. Frank, 48 F.3d 623, 633 & n.7 (2d Cir. 1995).

banks to interplead other potential claimants to the assets at issue. See Tr. of June 25, 2013, at 29–38, Vera v. Republic of Cuba, S.D.N.Y. ECF No. 274; see also Order Terminating Mots. and Regulating Status, Vera v. Republic of Cuba, S.D.N.Y. ECF No. 323.

Consistent with the court's directive, on September 20, 2013, Vera, Jr., filed with the court, and thereafter served on BBVA and other banks, an omnibus petition for the turnover of Cuban sovereign assets in New York against which writs of execution had been levied under the Southern-District-recognized Florida judgment. See Pet. for Turnover Order ¶¶ 48–49, Vera v. Republic of Cuba, S.D.N.Y. ECF No. 298.[4]

On September 10, 2014, while this turnover petition was pending, the district court rejected BBVA's challenges to jurisdiction and ordered BBVA to "provide full and complete answers with respect to the Republic of Cuba's assets located in [BBVA's] branches outside of, as well as inside, the United States." Order at 2, Vera v. Republic of Cuba, S.D.N.Y. ECF No. 677. BBVA both timely

---

[4] The omnibus petition includes claims by two other sets of plaintiffs seeking to collect unrelated judgments against the Republic of Cuba, which were consolidated before Judge Hellerstein for administrative purposes.

appealed and moved for reconsideration, arguing that this court's intervening decision in Gucci America, Inc. v. Weixing Li, 768 F.3d 122 (2d Cir. 2014), compelled the conclusion that BBVA was not subject to general personal jurisdiction in New York. In a single written opinion issued on March 17, 2015, the district court both (1) denied reconsideration of its September 20, 2014 enforcement order, and (2) granted the omnibus turnover petition as to Cuba's sovereign assets held at BBVA's New York branch. See 2015 WL 1244050 (S.D.N.Y. Mar. 17, 2015). BBVA timely appealed both orders.[5]

BBVA now moves for a stay of the district court's enforcement order pending resolution of these appeals, arguing that the district court lacked jurisdiction to order worldwide discovery. In opposing a stay, Vera, Jr., argues, inter alia, that this court is without jurisdiction because the appealed decisions are not final orders under 28 U.S.C. § 1291.

---

[5] BBVA's appeals from the district court's subpoena-enforcement order and denial of reconsideration, Nos. 14-2743-cv(L) and 15-1154-cv(Con), were consolidated by this court and underlie the stay motion presented to this panel. BBVA's appeals from the district court's turnover order and subsequent denial of reconsideration, Nos. 15-1147-cv(L) and 15-1796-cv(Con), have also been consolidated but are not at issue in the stay motion before this panel.

## II.   Discussion

This court has jurisdiction to review "final decisions" of a district court, 28 U.S.C. § 1291, as well as those interlocutory orders specified in 28 U.S.C. § 1292. Because BBVA asserts jurisdiction only under § 1291, and not under § 1292,[6] we here consider only whether the appealed orders enforcing the subpoena and denying reconsideration are "final decisions" within the meaning of § 1291.[7]

A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 467 (1978) (internal quotation marks omitted); accord Cox v. United States, 783 F.3d 145, 147 (2d Cir. 2015). Under the collateral order doctrine, an interlocutory order can also be deemed final and immediately

---

[6] Notably, the district court did not here certify its enforcement order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) (allowing Court of Appeals, in its discretion, to hear interlocutory appeal from non-final order where district court certifies that order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation").

[7] Because we determine the finality of an appealed order in the first instance, we need not attempt to decide what the district court was referencing when, in denying a stay of discovery pending appeal, the district court stated on June 4, 2015, that "the proceedings leading to this decision are as final as can be." Order at 6, Vera v. Republic of Cuba, S.D.N.Y. ECF No. 789.

appealable under § 1291 if it "(1) conclusively determines a disputed question; (2) resolves an important issue completely separate from the merits of the action; and (3) is effectively unreviewable on appeal from final judgment." EM Ltd. v. Republic of Argentina, 695 F.3d 201, 205–06 (2d Cir. 2012); see Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 545–47 (1949). The orders here at issue do not qualify as final decisions in either of these respects.

As precedent makes clear, "[u]nder traditional finality principles, a district court's decision to compel compliance with a subpoena or to deny a motion to quash a subpoena is generally not a 'final decision' and therefore is not immediately appealable." In re Air Crash at Belle Harbor, 490 F.3d 99, 104 (2d Cir. 2007) (internal quotation marks omitted). To obtain immediate appellate review of such an order absent § 1292(b) certification, the subpoenaed party must typically "defy the district court's enforcement order, be held in contempt, and then appeal the contempt order, which is regarded as final under § 1291." Id. (internal quotation marks omitted). This process, which recognizes only the contempt judgment, not the underlying enforcement order, as a final decision subject to appeal, "promotes the strong congressional policy—embodied in 28 U.S.C. § 1291—against piecemeal reviews, and against obstructing or impeding

11

an ongoing judicial proceeding by interlocutory appeals." Id. at 105 (internal quotation marks omitted). The availability to BBVA of review upon contempt also precludes application of the collateral order doctrine, which BBVA does not invoke in any event. See Gross v. Rell, 585 F.3d 72, 95 (2d Cir. 2009) (stating that arguments not raised on appeal are deemed waived). Compare Gucci Am., Inc. v. Weixing Li, 768 F.3d at 141–42 (reviewing validity of subpoena issued to third-party bank where bank defied enforcement order and was cited for contempt), with EM Ltd. v. Republic of Argentina, 695 F.3d at 206–07 (holding that collateral order doctrine afforded Argentina immediate review of order requiring foreign bank to disclose Argentina's worldwide assets because subsequent appellate review was unavailable and Argentina, as judgment debtor rather than party to whom disclosure order was directed, could not obtain review through disobedience and contempt).

The fact that the challenged orders are part of post-judgment litigation warrants no different conclusion. In such circumstances, the relevant "'final decision' is not the underlying judgment," i.e., the Florida judgment that Vera, Jr., was "attempting to enforce, but the subsequent judgment that concludes the collection proceedings." EM Ltd. v. Republic of Argentina, 695 F.3d at 205.

12

Absent defiance and contempt, appellate review of an order enforcing a subpoena—even one directed to a third party—is generally unavailable until the collection proceedings terminate, at which point the order will merge into the final judgment effecting <u>that</u> termination.  <u>See</u> <u>id.</u> at 205–06 (holding that discovery order directed to third-party bank is not "final decision" because it does not terminate creditors' collection proceedings against Argentina); <u>accord</u> <u>United States v. Fried</u>, 386 F.2d 691, 693–95 (2d Cir. 1967) (Friendly, J.) (holding that decision to enforce subpoena against third party in post-judgment collection proceedings was not appealable final order).

In urging otherwise, BBVA cites cases recognizing some subpoena-enforcement orders as § 1291 final decisions.  In those cases, however, the orders were issued to benefit proceedings pending before other authorities.  Because the enforcement orders granted all relief sought and thus concluded the work of the issuing district courts, the orders were akin to final judgments, even if not denominated as such.  <u>See</u> <u>United States v. Constr. Prods. Research, Inc.</u>, 73 F.3d 464, 469 (2d Cir. 1996) (holding that order directing witness to testify before administrative agency could be appealed immediately without defiance and contempt); <u>Dynegy Midstream Servs., LP v. Trammochem</u>, 451 F.3d 89, 92–94 (2d

13

Cir. 2006) (holding same for order directing compliance with arbitrator's subpoena). In such circumstances, "[t]he litigation to enforce the subpoena is an entirely self-contained court proceeding, and the court's order compelling compliance completely dispose[s] of the case, leaving nothing more for the court to do but enforce the judgment." Midstream Servs., LP v. Trammochem, 451 F.3d at 94; see Cobbledick v. United States, 309 U.S. 323, 330 (1940) (holding that, once court ordered witness to testify before commission, "there remain[ed] nothing for it to do"). That is not this case. The Southern District order compelling BBVA's compliance with the challenged subpoena was in furtherance of collection proceedings against Cuba that were, and remain, pending in that court, not in some other tribunal.

The same reasoning defeats BBVA's reliance on 28 U.S.C. § 1782 to establish the finality of the challenged orders. Section 1782(a) allows United States courts to order discovery "for use in a proceeding in a foreign or international tribunal." Because the issuance of such an order concludes all proceedings before the issuing district court, we have recognized § 1782 orders as final decisions subject to immediate appeal. See Chevron Corp. v. Berlinger, 629 F.3d 297, 306 (2d Cir. 2011). But BBVA was not here subpoenaed to provide

14

discovery for use in a foreign tribunal; it was subpoenaed to provide information in a collection proceeding pending in the Southern District—the same court that issued the discovery order in question. BBVA nevertheless maintains that the § 1782 analogy is apt because the only subpoenaed information it has withheld pertains to Cuba's assets outside the United States, and the district court cannot order the turnover of BBVA's extraterritorial assets under New York's "separate entity rule." See Motorola Credit Corp. v. Standard Chartered Bank, 24 N.Y.3d 149, 158–59, 996 N.Y.S.2d 594, 597–98 (2014) (holding that assets held at bank's foreign branches are beyond reach of New York post-judgment collection proceedings against bank's New York branch). Thus, BBVA argues, because compliance with the enforcement order can provide discovery of use only in foreign proceedings, it should be deemed the equivalent of a § 1782 final decision subject to immediate appeal.

The argument is unpersuasive because it requires judicial speculation to identify finality. Although BBVA maintains that its compliance with the enforcement order will yield information that can support collection efforts only in foreign courts, until the district court actually reviews such compliance, it cannot determine what authority it may have—whether in personam or in rem,

whether over BBVA or other parties, whether directly or through requests for foreign judicial assistance—to take actions to collect additional identified assets in satisfaction of the entered judgment. We express no view on this matter here. We conclude only that, in these circumstances, BBVA cannot demonstrate that the enforcement order, or the order denying its reconsideration, "end[ed] the litigation on the merits and le[ft] nothing [more] for the court to do." Coopers & Lybrand v. Livesay, 437 U.S. at 467 (internal quotation marks omitted).

To avoid this conclusion, BBVA attempts to distinguish various proceedings: (1) the Southern District turnover proceeding, in which it is named as a defendant; (2) the Southern District action to register and collect the Florida judgment, to which it is not a party; and (3) the original Florida state-court action under the FSIA. The endeavor need not detain us because, even if these proceedings are distinct actions—a question we do not decide, particularly as to the first two proceedings—that does not help BBVA demonstrate that the challenged orders are final decisions. We have already explained that the finality of the underlying Florida judgment does not determine the finality of the enforcement order issued by the district court. See EM Ltd. v. Republic of Argentina, 695 F.3d at 205. Whether or not the district court's turnover order is a

final decision as to assets already identified and subject to writs of execution, that order plainly does not encompass the unidentified extraterritorial assets that are the subject of the challenged orders.  As for the registration and collection action, because we have above determined that it is not yet concluded, an order enforcing a subpoena issued in that action is not a final decision.  See In re Air Crash at Belle Harbor, 490 F.3d at 104–05.

## III.  Conclusion

To summarize, BBVA has failed to demonstrate that the orders challenged on this appeal (1) enforcing an information subpoena, and (2) denying reconsideration of the enforcement order, are final decisions that ended the collection litigation in which they were issued.  Thus, we lack jurisdiction under 28 U.S.C. § 1291 to review these orders.

Accordingly, while BBVA's motion to file an oversized reply brief in support of its motion for a stay pending appeal is GRANTED, the appeals docketed under Nos. 14-3743-cv(L) and 15-1154-cv(Con) are DISMISSED for lack of jurisdiction, and BBVA's motion for a stay pending appeal and the motion of the Institute of International Bankers and the European Banking Federation to file an amicus curiae brief on appeal are DENIED AS MOOT.