16-3655
*Bouvier v. Adelson*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

-----

August Term, 2016

(Argued: May 17, 2017　　　　　　　Decided: August 28, 2017)

Docket No.　16-3655

-----

IN RE ACCENT DELIGHT INTERNATIONAL LTD., XITRANS FINANCE LTD.

-----

YVES BOUVIER, MEI INVEST LTD.,

　　　　　　　　　　　　*Intervenors-Appellants,*

V.

WARREN ADELSON, ALEXANDER PARISH, ROBERT SIMON,

　　　　　　　　　　　　*Respondents-Appellees,*

ACCENT DELIGHT INTERNATIONAL LTD., XITRANS FINANCE LTD.,

　　　　　　　　　　　　*Petitioners-Appellees,*

SOTHEBY'S,

　　　　　　　　　　　　*Respondent.*

-----

Before:

　　　RAGGI and CARNEY, *Circuit Judges*, and KAPLAN, *District Judge.**

-----

　　　Appeal from an order of the United States District Court for the Southern District of

New York (Furman, *J.*) granting Petitioners' application for discovery for use in certain foreign

---

　　　Judge Lewis A. Kaplan, United States District Judge for the Southern District of New York,
sitting by designation.

proceedings under 28 United States Code Section 1782.

Affirmed.

-----

DANIEL W. LEVY (James H. Smith, *on the brief*), McKool Smith, P.C., New York, NY, *for* Intervenors-Appellants.

DANIEL J. KORNSTEIN (O. Andrew F. Wilson and Douglas E. Lieb, *on the brief*), Emery Celli Brinckerhoff & Abady LLP, New York, NY, *for* Petitioners-Appellees.

-----

LEWIS A. KAPLAN, *District Judge.*

Intervenors-Appellants Yves Bouvier and MEI Invest Ltd. (collectively, "Bouvier") appeal from an order of the United States District Court for the Southern District of New York (Furman, *J.*) granting the application of Petitioners-Appellees Accent Delight International Ltd. and Xitrans Finance Ltd. (collectively, "Petitioners") for discovery in aid of foreign litigation under 28 United States Code Section 1782. Section 1782 provides that, upon an "application of any interested person," the "district court of the district in which a person resides or is found may order him . . . to produce a document . . . for use in a proceeding in a foreign or international tribunal."

This appeal presents primarily two issues regarding the statute's scope. The first is whether discovery sought pursuant to Section 1782 is "for use in a proceeding in a foreign or international tribunal" where the applicant is a crime victim authorized to submit the discovery to the foreign tribunal, but is not making a claim for damages therein. We hold that the statute encompasses such an application. The second is whether an applicant that lawfully has obtained discovery under Section 1782 as to one foreign proceeding may use that discovery in other foreign proceedings. We hold that the statute permits such use absent an order to the contrary by the Section 1782 district court. Because our holdings on these two issues accord with those of the district court, and because Bouvier's remaining grounds for appeal lack merit, we affirm.

2

## I. Background[1]

*A.    The Parties and the Foreign Proceedings*

Petitioners are British Virgin Island companies owned by family trusts of Dmitry Rybolovlev, a Russian national residing in Monaco.  Intervenor Yves Bouvier is a Swiss businessman who invests and deals in art through his co-intervenor MEI Invest Ltd., a Hong Kong company that he controls.  This Section 1782 proceeding arises out of a dispute between Bouvier and Petitioners over the sales to Petitioners of thirty-eight artworks, including paintings by Picasso and van Gogh, for a total of approximately $2 billion.

Petitioners, acting on Rybolovlev's behalf, acquired the thirty-eight artworks over the eleven-year period from 2003 to 2014.  Bouvier brokered the transactions and generally structured them as follows.  Bouvier contacted the owner of an artwork that Petitioners sought to acquire, purchased the work through MEI Invest or another of his associated companies, and later invoiced Petitioners for the purported purchase price plus a two-percent commission.  Petitioners consequently had little or no contact with the sellers or their agents.  This arrangement provided a degree of privacy often sought in high-profile art sales, in which it is common for buyers and sellers to act anonymously through intermediaries.  But Petitioners' remoteness from the deals came with some risk, as it left Bouvier in a privileged position over key details.  Petitioners therefore relied heavily on Bouvier's honesty and good faith.

The relationship between Petitioners and Bouvier soured in 2014 when *The New York Times* reported that Sotheby's had brokered a private sale of Leonardo da Vinci's *Christ as Salvator Mundi* in May 2013 for between $75 million and $80 million.  The news allegedly came as a surprise to Petitioners because they had purchased that same work through Bouvier, also in May 2013, for $127.5 million.  According to Petitioners, Bouvier had led them to believe that the sale was the culmination of fraught negotiations with a private seller.  Petitioners now allege that Bouvier's

---

[1] The facts are drawn from (1) decisions in the foreign proceedings, (2) assertions by Petitioners in their Section 1782 application, (3) transcripts of argument before the district court, (4) the district court opinion, and (5) other documents of record.

account of the sale was entirely false, that he failed to disclose Sotheby's role, and that he inflated the purchase price in order to pocket the $52 million difference. What is more, Petitioners maintain that Bouvier lied about the prices of the other thirty-seven artworks and, all told, defrauded Petitioners of $1 billion in secret margins over the eleven-year relationship.

Alerted to this potential fraud, Petitioners initiated or joined foreign proceedings against Bouvier in Monaco, France, and Singapore.

In Monaco, Petitioners initiated a criminal proceeding against Bouvier. Petitioners later joined the case as civil parties after the investigating magistrate brought charges for fraud and complicity in money laundering against Bouvier. The proceeding is pending.

The proceeding in France, also criminal in nature, was initiated by Pablo Picasso's stepdaughter, Catherine Hutin-Blay. Hutin-Blay alleges that two of the thirty-eight works that Petitioners acquired through Bouvier – Picasso's *Tête de femme* and *Espagnole à l'éventail* – were stolen from her. In France, as in Monaco, Petitioners are civil parties to an ongoing criminal investigation.

Petitioners filed also a civil suit in Singapore, where they sought damages from Bouvier for his alleged fraud. Some discussion of that case's procedural history is necessary to an understanding of the current state of play in the foreign proceedings.

Bouvier sought a stay of the litigation in the Singaporean trial court on principally two grounds: first, that Petitioners' damage claims there were duplicative of those in the Monégasque proceeding and, second, that Singapore was not an appropriate forum. The trial court denied Bouvier's stay motion, but in doing so imposed a condition that Petitioners discontinue their civil proceedings in Monaco in order to continue litigating in Singapore. Petitioners acceded to that instruction by disclaiming their right to damages in the Monégasque proceeding, an action that the Singaporean trial court later found had satisfied its condition. Bouvier then appealed the stay motion denial to the Court of Appeal of the Republic of Singapore, the country's court of last resort, where the case remained pending until shortly before we heard oral argument in this appeal. The Singaporean high court, ruling for Bouvier on appeal, granted a stay of the underlying litigation on

4

*forum non conveniens* grounds, effectively terminating the case.

Two points of significance emerge from this winding procedural path. First, the criminal cases in France and Monaco are the only foreign proceedings remaining as potential bases for Section 1782 discovery. Second, as a result of the Singaporean trial court's rulings, Petitioners do not seek damages in either case.

## B. District Court Proceedings

Petitioners filed this Section 1782 application for discovery in aid of the Monégasque, French, and Singaporean proceedings.[2] They named as respondents Sotheby's and the three individuals who had sold da Vinci's *Christ as Salvator Mundi* in May 2013. In their application, Petitioners claimed that Sotheby's was involved in other relevant acquisitions by Bouvier. Petitioners therefore requested discovery of documents relevant to all thirty-eight artworks because, due to Bouvier's alleged deception, they "did not know with certainty how many of the [artworks] were acquired by Bouvier with Sotheby's involvement, or whether Bouvier paid any undisclosed commission to Sotheby's or to any employee of Sotheby's out of his hidden margins."

Sotheby's and Petitioners then negotiated a settlement in which they agreed that Sotheby's would produce certain limited discovery, primarily concerning the sale of *Christ as Salvator Mundi*, which Petitioners would accept in total satisfaction of their Section 1782 application.[3] Bouvier properly intervened and objected to the agreed-upon production.

---

[2] Before Petitioners initiated this case, Bouvier filed his own § 1782 application against separate, third-party respondents in the Southern District of New York. He there sought certain documents and deposition testimony for use in the French and Monégasque proceedings. His initial production request extended to all documents relevant to the thirty-eight artworks that he had acquired for Petitioners. The district court (Cote, *J.*) denied the application except as it applied to documents relevant to the sale of one of the thirty-eight artworks – a painting by Amedo Modigliani – as to which the court granted discovery. Neither party appealed.

[3] Under the terms of the settlement, however, Sotheby's reserved the right to assert any potential grounds for opposing the requested discovery, including in response to any

5

At an initial conference, the district court granted the application with respect to the two Picasso paintings at issue in the French proceeding. It reserved judgment, however, on the remainder of the application. Bouvier had argued that one or both of two developments was likely to occur. First, he maintained that he would succeed on his appeal in Singapore and that the suit there would be dismissed. Second, he argued that, even if the Singaporean litigation continued, the Singaporean court nonetheless would require Petitioners to withdraw entirely from the Monégasque proceeding, as opposed to withdrawing only their damages claim. Either way, according to Bouvier, one or both of the proceedings would have come to an end.[4] In light of those possibilities, the district court postponed ruling "pending further developments in either or both Singapore or Monaco" and requested that the parties update the court when circumstances had changed sufficiently for it to rule on the balance of the application. Appellants' App. 292-93. In particular, the court stated that it would be helpful if Petitioners included in their update any determination by the magistrate presiding in the Monégasque proceeding that Petitioners' status there gave them "some rights to use evidence in those proceedings." *Id.* 292.

Over the following months, Petitioners obtained and submitted to the court a letter from the Monégasque magistrate. The magistrate confirmed that Petitioners were "civil parties" to the investigation, a status that made it "perfectly permissible" for them "to take part in the discovery of the truth in the investigative proceeding."[5] *Id.* 304. The magistrate elaborated that, as civil

subsequent applications.

[4]
Bouvier has maintained that position in his appellate briefs, which were submitted prior to the Singapore Court of Appeal's ruling. *See* Appellants' Br. 40 ("Thus, if Bouvier and MEI prevail on their appeal in Singapore . . . [Petitioners'] participation in the Monaco [p]roceeding will cease entirely and, indeed, the Singapore [p]roceeding will also terminate."). Bouvier's prognostication, however, proved only partially correct; although he prevailed in Singapore, Petitioners remain civil parties to the pending investigation in Monaco.

[5]
The magistrate's letter is written in French; this opinion quotes from an English translation that Petitioners submitted to the district court, the validity of which Bouvier does not challenge.

6

parties, Petitioners "may submit any documents that [they] deem[ed] useful" for the investigation, including "any information about the works of art [from] SOTHEBY's New York, the painting by Leonardo da Vinci entitled 'Christ as Salvador Mundi' and, more particularly, the various transactions conducted involving that painting over the last five years." *Id.*

Petitioners requested that the court approve their application in light of the magistrate's letter, which they claimed made clear that they had met their burden for Section 1782 discovery with respect to the Monégasque proceeding. Bouvier argued nevertheless that the court should delay its ruling further. According to Bouvier, nothing had changed since the initial conference that would warrant the court revisiting the matter. Moreover, Bouvier persisted in his argument that Petitioners could not satisfy Section 1782's requirement that the requested discovery be "for use" in a foreign proceeding, and he insisted that the magistrate's letter added nothing new to that analysis.

The district court issued a memorandum opinion and order granting Petitioners' application on October 5, 2016. Insofar as is relevant here, the court rejected Bouvier's argument that Petitioners' status in Monaco was insufficient for them to "use" the documents in that forum within the meaning of the statute. Rather, it concluded that Petitioners had satisfied the "for use" requirement and other statutory prerequisites for Section 1782 discovery. After consulting the factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), which guide district courts in exercising their discretion under Section 1782, the court concluded that they favored granting the request for discovery in this instance. Finally, the court rejected Bouvier's contention that "the use and disclosure of any subpoenaed documents . . . be limited to the foreign proceeding for which it has been authorized," namely the Monégasque case. Appellants' App. 329.

Two weeks later, the parties appeared before the court to discuss a protective order that would govern use of the discovery. While the district court previously had denied Bouvier's request to limit use of the discovery produced to the Monégasque proceeding only, the court ultimately expressed the view that the production "should be limited at least in the first instance to the foreign proceedings referenced in the petition – namely, Monaco, France, and Singapore." *Id.*

7

334. The parties thereafter executed a protective order incorporating that limitation, which the court so-ordered.[6] Under the terms of that order, Petitioners must seek leave of the court to submit the discovery in any additional proceeding.

Bouvier timely appealed the district court's order granting the application and its associated rulings and moved this Court for a stay pending appeal. A judge of this Court granted a temporary stay of the district court's order to the extent that it allowed use of the discovery in the Singaporean and French proceedings. A three-judge motions panel later granted Bouvier's motion for a stay in its entirety and thus prohibited also the use of the documents in Monaco, but not before Petitioners had submitted the documents produced pursuant to the district court's order in the Monégasque proceeding.

## II. Discussion

Bouvier makes two principal arguments on appeal.[7] First, he contends that the district court erred in holding that Petitioners had satisfied Section 1782's "for use" requirement with respect to the Monégasque proceeding. This is so, Bouvier urges, principally because Petitioners have waived their claim for damages in that forum and thus cannot employ the discovery to their advantage in the manner that Bouvier contends that the statute and this Court's precedents require. Second, Bouvier maintains that, even if the district court properly granted the application as to the Monégasque proceeding, it erred in entering a protective order permitting use of the discovery in France and Singapore without holding that Petitioners had satisfied the requirements of Section 1782

---

[6]

After the submission of the proposed protective order, Bouvier wrote to the court to request that the order be modified so that "under no circumstances" would Petitioners "be permitted to use any discovery obtained as a result of the subpoenas in the [French] proceeding." Appellants' App. 396. The court rejected that argument in a memorandum endorsement accompanying its protective order. The court there characterized Bouvier's request as an attempt "to accomplish through the protective order what [he] failed to accomplish in briefing on the merits." *Id.* 398.

[7]

We address the remaining arguments in a summary order filed simultaneously with this opinion.

with respect to those proceedings. Bouvier therefore asks us to vacate the order below. We reject both contentions.

*A.	Appellate Jurisdiction*

Orders granting (or denying) applications for discovery under Section 1782 are considered final adjudications and are immediately appealable pursuant to 28 United States Code Section 1291. *See Vera v. Republic of Cuba*, 802 F.3d 242, 247 (2d Cir. 2015) ("Because the issuance of [a Section 1782] order concludes all proceedings before the issuing district court, we have recognized [Section] 1782 orders as final decisions subject to immediate appeal." (citing *Chevron Corp. v. Berlinger*, 629 F.3d 297, 306 (2d Cir. 2011)). Before addressing the merits, however, we first must assure ourselves of our jurisdiction in light of changed circumstances. *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994) ("[T]he condition of mootness is not a defense that c[an] be waived . . . but rather is a condition that deprives the court of subject matter jurisdiction."). Notably, Petitioners' submission of the discovery in the Monégasque proceeding arguably mooted the question whether the district court erred in granting discovery as to that proceeding. That development, together with the indefinite stay of the Singaporean litigation, leaves as a live controversy only that portion of the Section 1782 application as applied to the French proceeding. *See Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 29 (2d Cir. 1998) (holding that "the district court was correct in dismissing the [Section 1782 application] as moot because at that time there were no foreign proceedings, within the meaning of the statute, in which the discovery could be used").

We conclude that the pending French proceeding saves this appeal from mootness. Petitioners have represented to the Court that they intend to submit the discovery in the French proceeding should we affirm the order below. Petitioners' right to do so depends on our resolution in Petitioners' favor of both of Bouvier's primary arguments on appeal. That is, we must address whether the discovery was "for use" in Monaco because Petitioners derive their right to use the discovery in France from their having satisfied the conditions of Section 1782 for use in the

9

Monégasque proceeding. We then must decide whether the district court, having granted discovery as to Monaco, erred in permitting its use in France without finding that the proceeding there independently met the statutory requirements. In consequence, neither argument addressed in this opinion is moot.

Assured of our jurisdiction, we turn to Bouvier's arguments on appeal. Because both challenge the district court's interpretation of Section 1782, rather than its discretionary grant of discovery under the statute, our review is *de novo*. *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015).

B. *The "For Use" Requirement*

Section 1782 applicants must meet certain "statutory requirements": (1) the person from whom discovery is sought must reside or be found in the district in which the application was made, (2) the discovery must be "for use in a foreign proceeding before a foreign tribunal," and (3) the applicant must be either a foreign tribunal or an "interested person." *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015) (internal quotation marks omitted). Bouvier focuses here on the second requirement.

The thrust of Bouvier's argument is that Petitioners cannot "use" the discovery in Monaco within the meaning of the statute because Petitioners are no longer seeking "any form of relief" in that proceeding. Appellants' Br. 37. Although it is difficult to pin-point his position precisely, Bouvier appears to argue that Section 1782 applicants must have a "chance[ ] of success" in the foreign proceeding, which strongly implies that they must be pressing a formal claim for relief there. *Id.* 38. In any event, he argues that Petitioners' sole remaining interest in the Monégasque proceeding is to see justice done as crime victims, which on the "unique facts of this case" renders them unable to satisfy the "for use" requirement. *Id.* 37.

We reject this argument as contrary to the text of the statute as interpreted by this and the Supreme Court and to the undisputed facts in the record.

Bouvier's argument falters at the starting line of any Section 1782 analysis – the Supreme Court's seminal *Intel* decision. The Section 1782 applicant in *Intel* stood in a remarkably

similar position *vis-a-vi*s the foreign tribunal in that case as do Petitioners in the Monégasque proceeding. The *Intel* applicant sought discovery in aid of an antitrust proceeding that it had initiated against a competitor by filing a complaint with the Directorate-General for Competition of the Commission of the European Communities. *Intel*, 542 U.S. at 246. That entity had the power "to conduct investigations" into alleged violations of European competition prescriptions, to issue a "formal written decision whether to pursue the complaint," and to elevate the matter to the European Commission and eventually the courts. *Id.* at 254-55 (internal quotation marks omitted). Notably, the *Intel* applicant lacked "formal 'party' or 'litigant' status" in the proceeding, but did possess "significant procedural rights" like the power to submit "information in support of its allegations" and to seek judicial review of the tribunal's disposition of its complaint. *Id.* at 255.

*Intel* held that the application at issue met the requirements of Section 1782, including the statute's mandate that the discovery be "for use in a proceeding in a foreign or international tribunal." *See id.* at 257-58. While it is true that the Court's opinion specifically addressed only the second half of that clause – whether proceedings before the Directorate-General for Competition constituted a "foreign or international tribunal" under Section 1782 – the Court nonetheless affirmed the order of the Court of Appeals, which had held that the statutory requirements had been met. *See id.* at 257-58, 267; *see also KPMG*, 798 F.3d at 118 ("The [*Intel*] Court appeared to regard the case before it as an easy one, in effect finding that the facts before it were sufficient to satisfy the requirements of the statute . . . ."). The Court did so despite the fact that the application on its face lacked several of the features that Bouvier now claims are prerequisites under Section 1782. The *Intel* applicant was not a party to the foreign proceeding, it there pressed no claim for relief on its own behalf, and it stood no chance of obtaining a damages award. *Intel* thus supports the view that Section 1782 does not impose such requirements.

Our own precedents also suggest strongly that Section 1782's "for use" clause will not support the crabbed reading that Bouvier would have us assign to it. In *In re Application for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in Foreign Proceedings (Berlamont)*, for example, we affirmed an order of the district court granting Section 1782 discovery

11

in aid of a Swiss criminal prosecution. 773 F.3d 456, 462 (2d Cir. 2014). The Section 1782 applicant there, "a Swiss criminal complainant," sought documents "to provide to a Swiss investigating magistrate overseeing a criminal inquiry related to a Bernard Madoff 'feeder fund' in Switzerland."[8] *Id.* at 457. As the Supreme Court had done in *Intel*, we focused on whether the proceeding in the non-judicial foreign tribunal at issue qualified under Section 1782, a question we answered in the affirmative. *See id.* at 461 ("The Swiss criminal investigation in the instant case is exactly the type of proceeding that . . . the statute . . . intended to reach."). We therefore did not address the meaning of "for use" in the way this appeal requires of us. Just as in *Intel*, however, the facts underlying the successful Section 1782 application in *Berlamont* bore a striking similarity to those in this case. The applicant in *Berlamont* did not have a claim for relief in the Swiss proceeding, nor did he assert that he sought damages there. Rather, he appeared before the Section 1782 court as a fraud victim requesting discovery relevant to a foreign criminal investigation that he had initiated via complaint. It is difficult to imagine a situation more analogous to Petitioners'.

Intel and *Berlamont* take much of the air out of Bouvier's "for use" argument, even though they do not squarely resolve this case. But it is Bouvier's unpersuasive attempt to distinguish those cases that best illuminates the untenable line he would draw separating those who properly can "use" Section 1782 discovery from those who can not. Bouvier asserts that any comparison of this case to *Berlamont* "is, in a word, preposterous." Appellants' Reply Br. 7. That is so, he explains, because in that case "the complaining party who sought discovery under Section 1782 had a *financial* interest in the outcome of the foreign proceeding." Appellants' Br. 38 (emphasis in original). In so arguing, Bouvier suggests that the applicant in *Berlamont*, a criminal complainant claiming to be the victim of a Ponzi scheme, had a more direct route to financial recovery than do Petitioners.[9]

---

[8] The applicant was president of a firm that had invested in a fund that, in turn, had invested with Madoff. *See id.*

[9] We note that nothing in our *Berlamont* opinion, or in that of the district court which it affirmed, suggests that the applicant sought restitution or damages as part of the Swiss criminal investigation that formed the basis of his § 1782 application. To the extent

Similarly, in addressing *Intel*, Bouvier argues that because the European Commission had the power to impose fines or penalties on the applicant's competitor, the applicant "maintained an interest far greater" in that investigation than Petitioners do in Monaco. Appellants' Reply Br. 6. According to Bouvier, then, Section 1782 prefers claims for damages or pleas for enforcement of antitrust laws over the interest of a fraud victim in assisting in the prosecution of a fraudster.

Bouvier's line-drawing exercise fails because it finds no support in the text of the statute or in our prior interpretations of the "for use" clause. There is nothing in the text of the statute that suggests that applicants like Petitioners lack the power to use discovery that those in *Intel* and *Berlamont* possessed. If anything, the text refutes Bouvier's position. Section 1782 explicitly permits district courts to grant discovery in aid of "criminal investigations conducted before formal accusation,"[10] which are among the cases least likely to feature claims by private litigants for money damages notwithstanding the considerable variation in procedural rules across countries (including those involved in this appeal). Congress' inclusion of these types of proceedings within the ambit of Section 1782 suggests that it contemplated a more expansive universe of foreign disputes and interested parties that qualify under the statute than Bouvier's reading of "for use" would permit. *See Intel*, 542 U.S. at 256 ("The text of [Section] 1782(a), 'upon the application of any interested person,' plainly reaches beyond the universe of persons designated litigant."); *id.* at 257-58 (noting that Congress previously had expanded the statute's application from "any judicial proceeding" to

Bouvier's argument rests on the assumption that a conviction in the Swiss criminal case would have led ineluctably to the *Berlamont* applicant's compensation, that possibility was no more or less speculative than Petitioners' chance of recovering against Bouvier. It is true enough that Petitioners have waived damages in the Monégasque proceeding, but it does not follow that an adjudication of Bouvier's guilt in that forum would not aid Petitioners in their quest for monetary relief elsewhere. It therefore is not accurate to assert that Petitioners lack any financial stake in the outcome of the Monaco proceeding.

[10] Congress amended the statute to include the quoted language in 1996. *See* National Defense Authorization Act for Fiscal Year 1996, Pub. L. No. 104-106, § 1342(b), 110 Stat. 486; *see also Intel*, 542 U.S. at 249, 259 (noting fact of amendment and stating that [n]othing suggests that this amendment was an endeavor to rein in, rather than to confirm, by way of example, the broad range of discovery authorized in 1964").

13

"a proceeding in a foreign or international tribunal" in order to reach a broader set of foreign proceedings).

In any event, Bouvier's evaluation of the strength of Petitioners' "interests" is very much beside the point. Neither the *Intel* nor the *Berlamont* courts engaged in a similar analysis when holding that the discovery requested in those cases was "for use in a proceeding in a foreign or international tribunal." Their silence on that question is unsurprising because that simply is not the work the words "for use" do in Section 1782.[11]

This Court has addressed the "for use" requirement on several occasions. *See, e.g.*, *KMPG*, 798 F.3d at 122-24; *Mees*, 793 F.3d at 298-301; *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 81-84 (2d Cir. 2012). Although we have approached the issue according to the particular facts of each case and the arguments presented, we have focused in each on the *practical ability* of an applicant to place a beneficial document – or the information it contains – before a foreign tribunal. We never have required, as Bouvier now urges us to do, that an applicant be pursuing a certain type of relief in that tribunal. The cases of ours on which Bouvier principally relies – *KPMG* and *Mees* – show this to be true.

The Section 1782 applicants in *KPMG*, which were investment funds, sought discovery relevant to certain pending and planned foreign proceedings involving two Saudi companies in which they held ownership interests. 798 F.3d at 116. We held that they could not satisfy the "for use" requirement primarily because they were not – nor were they sufficiently related to – parties to the relevant foreign proceedings and lacked the type of "participation rights" that the *Intel* Court had found significant. *See id.* at 120-21. The *KPMG* applicants therefore were not in a "position to have the [tribunals] consider that evidence" and had no "*means of injecting* the evidence into the proceeding." *Id.* at 120-21 (emphasis added); *see also id.* at 121 (rejecting alleged

[11]

Bouvier perhaps conflates § 1782's "for use" requirement with the separate, but related, requirement that the applicant be an "interested person." *See KPMG*, 798 F.3d at 118-19. We need not dwell on the issue because Bouvier did not challenge Petitioners' interested party status before the district court, nor does he address that requirement on appeal.

14

participation rights "that upon examination reveal *no mechanism* by which [the applicants] could use any information obtained through a [Section] 1782 order" in the foreign proceeding (emphasis added)); *id.* at 122 (noting that, although discovery sought would have been "useful" to applicants, "that does not imply that there is *any way for [them] to introduce* that information as evidence" in foreign proceeding (emphasis added)). Most notably, we did not rely on the strength of the applicants' interest in the foreign proceedings in holding that the application failed the "for use" test. To the contrary, we acknowledged their significant financial stakes in the outcome, but considered those stakes irrelevant to whether they possessed the practical ability to use the discovery.[12] *See id.* at 120-22.

Mees* similarly is unhelpful for Bouvier. There, we vacated an order of a district court that had held that a Section 1782 applicant who sought discovery in aid of an anticipated defamation suit in a Dutch court "did not meet the 'for use' requirement on the ground that the discovery she sought was not *necessary* to draft an adequate complaint." 793 F.3d at 298 (emphasis added). In rejecting this proposed necessity requirement, we relied on the plain meaning of "use" as indicating "something that will be employed with some advantage or serve some use in the proceeding – not necessarily something without which the applicant could not prevail." *Id.* Bouvier latches onto this language, arguing that Petitioners cannot employ the discovery to their advantage because they have abandoned their damages claim in Monaco. But our analysis in *Mees* did not turn on the fact that the Section 1782 applicant there had a viable cause of action in the Netherlands or a chance at a damages award. We instead required, as we did in *KPMG*, that the applicant merely "show[ ] that the materials she seeks are to be used at some stage of a foreign proceeding." *Id.* at 301. On the question whether Petitioners have made that showing, *Mees* had nothing to say.

From this discussion the following principles emerge. First, a Section 1782 applicant must establish that he or she has the practical ability to inject the requested information

_____

12

We expressed doubt as to whether the applicants' "*financial* interest in the outcome of the foreign proceedings alone could be sufficient to confer 'interested person' status under the statute," but ultimately did not decide that question. *Id.* at 119 (emphasis in original).

15

into a foreign proceeding. Second, as long as he or she makes that showing, it is not fatal to the application that he or she lacks a claim for relief before the foreign tribunal, whether for damages or otherwise. Rather, the term "for use" in Section 1782 has only its ordinary meaning – that the requested discovery is "something that will be employed with some advantage or serve some use in the proceeding." *Id.* at 298.

Turning to the case at hand, we hold that Petitioners have established that the requested discovery is "for use" in the Monégasque proceeding. As the district court recognized, Petitioners are parties to that proceeding who, while they have abandoned any claim there for monetary relief, retain the procedural right to submit the requested documents to the magistrate overseeing the investigation. What is more, and notwithstanding Bouvier's assertion to the contrary, Petitioners' introduction of the discovery would be to their "advantage" and "serve some use" if it tends to prove Bouvier's alleged fraud against them.[13]

Finally, we respond to Bouvier's contention that our holding today "would permit virtually anyone to obtain discovery under Section 1782." Appellants' Reply Br. 5. We think his professed fears are unwarranted for three reasons. First, it is unlikely that any member of the public with no apparent connection to a dispute in the foreign tribunal would have procedural opportunities to "use" discovery there as we have defined that term. Second, Section 1782's distinct requirement that applicants be "interested persons" serves as an adequate roadblock to applicants with connections too attenuated to justify granting discovery in this country. Third, even if the statutory requirements are met, a grant of discovery under Section 1782 remains within the discretion of the district court and therefore its misuse can be avoided through the prudent exercise of that court's

---

[13]

Bouvier maintains that the requested discovery would neither be incriminatory nor relevant to the Monégasque proceeding. According to Petitioners, however, the documents will show the differential between what Bouvier paid Sotheby's and what he later charged them. Bouvier rejoins that this information is not relevant because he "has already admitted in Monaco to making a substantial profit" on the works. Appellants' Br. 43. But Bouvier's argument goes more toward whether the information is cumulative of other evidence in the investigation, not whether it is relevant. We lack the necessary factual record to make that determination and would not do so in any event.

16

discretion. *See Intel*, 542 U.S. at 264. For these reasons and those stated above, we decline Bouvier's invitation to import into the phrase "for use" additional requirements that the text of Section 1782 and our prior interpretations cannot support.

*C.*      *Use of Discovery Outside of the Monaco Proceeding*

We turn to the second of Bouvier's primary arguments on appeal. As explained above, while the district court conducted its analysis of the Section 1782 statutory requirements with respect only to the Monégasque proceeding, the protective order permits Petitioners to use the discovery also in France and Singapore. Bouvier contends that this was error. According to Bouvier, a Section 1782 applicant must satisfy the statutory requirements for each foreign proceeding for which he or she wishes to use the requested discovery. This presents an issue of first impression in this Court, which we address by looking "to the language of the statute, the intent of Congress as expressed in the legislative history, and cases involving the interpretation of this and similar statutes." *United States v. Allen*, 788 F.3d 61, 66 (2d Cir. 2015) (citations omitted).

The statute's text reveals no great insights. Bouvier maintains that a "straightforward reading" of Section 1782's grant of discovery "for use in *a proceeding* in a foreign or international tribunal" reveals that "the relevant unit of measurement for granting relief under Section 1782 is the specific foreign proceeding for which the applicant seeks to use the discovery." Appellants' Br. 28 (emphasis in original) (internal quotation marks omitted). But no one denies that a district court must find that a Section 1782 applicant has met the statutory requirements, including the "for use" requirement, with reference to at least one specific proceeding. The proper "unit of measurement" for that analysis has no bearing on the question at hand – *i.e.*, what, if any, limits Section 1782 places on an applicant's ability to use the discovery obtained under the statute *after* it lawfully has been obtained for use in a particular forum.

Nor does the legislative history hold the key. The parties identify no legislative materials that speak directly to the issue. Some general observations can be made, however, that counsel against adopting Bouvier's position.

17

Congress enacted Section 1782 with the "twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *In re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992). The availability of Section 1782 discovery therefore is quite broad and only has broadened through successive amendments over the years. *See Intel*, 542 U.S. at 247-49 (recounting changes in various amendments). In consequence, the role of the district courts as gatekeepers is paramount. *See* Hans Smit, *Recent Developments in International Litigation*, 35 S. Tex. L. Rev. 215, 237 (1994) ("The drafters of [Section] 1782 deliberately gave the American court discretion in granting the assistance for which it provides."). Most relevant here, Section 1782 leaves to the district courts' discretion both the decision to grant discovery and to "prescribe the practice and procedure" for its production. 28 U.S.C. § 1782(a). That delegation accords with Congress' intent to "leave[ ] the issuance of an appropriate order to the discretion of the court which, in proper cases, may refuse to issue an order or may impose conditions it deems desirable." S. Rep. No. 88-1580 (1964), as reprinted in 1964 U.S.C.C.A.N. 3782, 3788.

Both the text and the legislative history thus demonstrate that Section 1782 entrusts to the district courts many decisions about the manner in which discovery under the statute is produced, handled, and used. We see no reason why the number or identity of the foreign proceedings in which a successful applicant may use discovery produced pursuant to the statute would fall outside that discretionary grant. Bouvier provides none. Moreover, we previously have declined to read into Section 1782 categorical restrictions that lack textual support when district courts in their discretionary review adequately can address the concerns raised. In *Malev*, for example, we held that Section 1782 does not require applicants first to seek discovery in the foreign tribunal before applying in this country, but noted that district courts "may impose conditions to minimize the compliance burdens" on a case-by-case basis. 964 F.2d at 100. In *Mees*, we rejected the argument that discovery requested under the statute be absolutely necessary to the foreign proceeding, but noted that "[o]f course, [our] holding does not mean that Mees is necessarily entitled to discovery under" Section 1782 because "a district court may grant or deny the application in its

discretion." 793 F.3d at 301. There are other examples.

We have found no on-point cases with respect to Bouvier's specific contention that materials produced for use in Monaco cannot be used in proceedings in Singapore, France, or elsewhere. A recent case in the Eleventh Circuit, *Glock v. Glock, Inc.*, 797 F.3d 1002 (11th Cir. 2015), presents the closest analogue. The court there decided a slightly different question – whether discovery previously produced under Section 1782 can be used in a later United States litigation with leave of the court that granted it under an applicable protective order. *Id.* at 1006. We nonetheless find much of the court's analysis relevant and persuasive.

Starting with the statute's text, the *Glock* court found, as we did above, "nothing in the language of [Section] 1782 that purports to limit later uses of evidence that have been properly obtained under [Section] 1782." *Id.* The legislative history also provided no obvious answer. *See id.* at 1007. The court therefore reasoned from the principles that, in domestic litigation, "parties may use any evidence they lawfully possess" and that, should a plaintiff "obtain[ ] documents in discovery from a defendant in one case, nothing precludes her from using that evidence in a wholly separate lawsuit against the same defendant or a different party." *Id.* This led to the conclusion that Section 1782 "does not preclude, as a matter of law, the use of evidence procured pursuant to it in subsequent United States civil litigation" absent a protective order commanding otherwise *Id.* at 1010.

The same principles apply here to defeat Bouvier's argument. Section 1782 provides that a district court's order "may prescribe the practice and procedure" for taking the discovery and that "[t]o the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." 17 U.S.C. § 1782(a). And, as the *Glock* court recognized, the Federal Rules of Civil Procedure do not regulate what litigants may do with discovery after it lawfully has been obtained. Of course, in domestic civil litigation, courts may issue protective orders that restrain parties from using the discovery for other purposes, including as evidence in other litigations. *See* Fed. R. Civ. P. 26(c). So too may district courts in Section 1782 cases, as indeed they often do and as the district

court did in this case.[14] *See, e.g.*, *In re Letter of Request from Crown Prosecution Serv. of U.K.*, 870 F.2d 686, 693 n.11 (D.C. Cir. 1989) (Ruth Bader Ginsburg, *J.*) ("The district court did not abuse its discretion in rejecting [a] plea for a protective order to guard against improper use of the evidence in auxiliary or unrelated proceeding here or abroad."). These common restrictions would be entirely superfluous if Section 1782 by its own terms prohibited successful applicants from using the documents elsewhere.

In sum, we hold that Section 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise.

Bouvier argues that this holding would "perversely incentivize[ ] parties to institute sham litigation as a cover to obtain Section 1782 discovery for use in other proceedings that could never have met the requirements of the statute." Appellants' Reply Br. 12. We recognize this legitimate if perhaps far fetched concern. We believe, however, that "[p]arties concerned in a particular case that a [Section] 1782 applicant is attempting to use foreign litigation as a ruse for obtaining discovery" for use in other foreign proceedings "can and should bring evidence of such chicanery to the [Section] 1782 court's attention." *Glock*, 797 F.3d at 1009. Should such evidence exist, it could provide good cause for entry of a protective order prohibiting use of the discovery in other proceedings, *see* Fed. R. Civ. P. 26(c)(1), and might support denying the Section 1782 application altogether, *see Intel*, 542 U.S. at 265 (including as a discretionary factor whether the "request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States").

Bouvier does not argue that Petitioners initiated or sought discovery for use in the Monégasque, Singaporean, or French proceedings in bad faith. We are confident that Bouvier would have presented any such evidence to the district court. We similarly are confident that in the mine-

---

[14] As Petitioners have not appealed from the protective order entered by the district court, the question whether its entry was a permissible exercise of discretion is not before us.

run of cases, the adversarial system and the district courts in their discretionary review will be able to weed out abusive Section 1782 applications.[15]

### III. Conclusion

For the foregoing reasons, the October 5, 2016 order of the district court, insofar as it pertains to the arguments addressed herein, is AFFIRMED.

---

[15] Petitioners argue that we may affirm on the alternative basis that their application independently met the statutory requirements for discovery for use in the French proceeding. On this question, Bouvier contends that the requested discovery is not relevant to the French proceeding and thus cannot be "for use" there. Our holding on the statutory argument makes resolution of these issues unnecessary. We note, however, that any documents in Sotheby's possession containing evidence of Bouvier's alleged duplicity with regard to one of the thirty-eight artworks he acquired on behalf of Petitioners very well could be relevant to the investigation in France, which is centered on the two Picasso works. Moreover, Bouvier's argument in this regard rings hollow in light of his own previous § 1782 application for discovery for use in the French proceeding that requested discovery relevant to all thirty-eight artworks he acquired for Petitioners.