**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NOVALPINA CAPITAL
PARTNERS I GP S.A.R.L,

*Petitioner - Appellee*,

and

TREO ASSET MANAGEMENT,
LLC AND TREO NOAL GP,

*Intervenor - Appellant*,

v.

TOBIAS READ; MICHAEL
LANGDON,

*Respondents - Appellees*.

No. 24-4835

D.C. No.
3:23-mc-00082-
IM

OPINION

Appeal from the United States District Court
for the District of Oregon
Karin J. Immergut, District Judge, Presiding

Argued and Submitted June 9, 2025
San Francisco, California

Filed August 12, 2025

Before: SIDNEY R. THOMAS and MILAN D. SMITH, JR., Circuit Judges, and DOUGLAS L. RAYES, District Judge.[*]

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[**]

### Discovery for Use in Foreign Proceedings

Affirming the district court, the panel held that the district court did not abuse its discretion in denying an intervenor's motion for reconsideration of a grant of discovery under 28 U.S.C. § 1782 and an alternative request to modify a protective order, where the documents produced were used in foreign proceedings other than those identified in the § 1782 petition.

The panel held that it had jurisdiction over the district court's order denying intervenor Treo Asset Management, LLC, and Treo NOAL GP S.a.r.l.'s motion for reconsideration and alternative request for modification of a protective order. First, the district court properly exercised its discretion in allowing Treo to permissively intervene where the documents that Novalpina Capital Partners I GP S.A.R.L. sought would allegedly be used to defend against litigation brought by Treo, and Treo would also be one of the

---

[*] The Honorable Douglas L. Rayes, United States District Judge for the District of Arizona, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

defendants in Novalpina's contemplated future fraud action. Second, the district court's order was final and appealable under 28 U.S.C. § 1291. Third, Treo had standing because the documents in question were intended to be, and were currently being, used in litigation against Treo.

Agreeing with the Second and Eleventh Circuits, the panel held that documents produced "for use" in specific foreign proceedings under § 1782 may be used in proceedings other than those identified in the petition, absent an order to the contrary by the § 1782 district court.

The panel held that the district court did not abuse its discretion in denying Treo's motion for reconsideration. The panel held that the district court applied the correct legal standard under Federal Rule of Civil Procedure 60(b)(2), and rejected Treo's argument that the district court failed to recognize, based on the evidence in the record, that it had been misled by Novalpina.

Finally, the panel held that the district court also did not abuse its discretion in denying Treo's request to modify the protective order.

**COUNSEL**

Tara J. Plochocki (argued), Sequor Law PA, Washington, D.C.; Christopher A. Noel and Joseph Rome, Sequor Law PA, Miami, Florida; Jesse D. Mondry, Harris Sliwoski LLP, Portland, Oregon; for Petitioner-Appellee.

Edward B. Diskant (argued), McDermott Will & Emery LLP, New York, New York; James Durkin, McDermott Will & Emery LLP, Chicago, Illinois; Sagar K. Ravi, McDermott Will & Emery LLP, Washington, D.C.; Peter D. Hawkes, Angeli & Calfo LLC, Portland, Oregon; for Intervenor-Appellants.

Ian Christy and Thomas C. Sand, Miller Nash LLP, Portland, Oregon, for Respondents-Appellees.

# OPINION

M. SMITH, Circuit Judge:

This appeal concerns just one thread in a sprawling tangle of litigation related to the bitter breakup between a Luxembourg-based investment fund and its former General Partner. While the dispute has mushroomed into a variety of civil cases and criminal investigations winding their way through multiple legal systems, the question before us is simple: did the district court abuse its discretion in denying a motion for reconsideration of a grant of discovery under 28 U.S.C. § 1782 and an alternative request to modify a protective order, where the documents produced were used in foreign proceedings other than those identified in the § 1782 petition? Because we hold that documents produced "for use" under § 1782 as to one foreign proceeding may be used in other proceedings, and because we find that the district court did not abuse its discretion in determining that it was not misled by the party requesting discovery, we affirm.

## FACTUAL BACKGROUND

As might be expected from such an acrimonious split, the parties present very different versions of the relevant facts. To start from the undisputed beginning: in 2017, Stephen Peel, Stefan Kowski, and Bastian Lueken (the Founders) created the Luxembourg-based investment fund now known as NOAL SCSp (the Fund). Petitioner-Appellee Novalpina Capital Partners I GP S.À.R.L. (Novalpina) served as the initial General Partner of the Fund, a position now held by Intervenor-Appellant Treo NOAL GP S.à.r.l., whose parent company is Intervenor-Appellant Treo Asset Management (collectively, Treo).

The Fund began with three limited partners, including Peel's family trust and a wholly owned subsidiary of a corporation known as "Topco." Each Founder holds a one-third interest in Topco, which is also the ultimate parent corporation of Novalpina. Over time, the Fund added more than 70 other institutional investors or private individuals as limited partners, swelling the commitments in the Fund to approximately €1 billion. The largest of these new limited partners was the Oregon Public Employees Retirement Fund (OPERF), which had invested approximately €200 million in the Fund. At all relevant times, Michael Langdon was the Director of Private Markets in the Oregon State Treasury Investment Division, where he recommended investments in private equity to be made on behalf of OPERF, while Tobias Reed was the Oregon State Treasurer.

The Fund's operating structure can be described as intricate at best and byzantine at worst. Most relevant here, it primarily holds its assets through a holding company known as "Master Luxco." Master Luxco's holdings have included the French pharmaceutical company LXO, the Romanian gambling company Maxbet, and the Israeli spyware company NSO Group. In turn, three partners control Master Luxco: the Fund (directly holding less than one percent of Master Luxco's shares), the Fund (indirectly holding just over ninety-eight percent of Master Luxco's shares via other entities held by the Fund), and Novalpina (holding less than one percent of Master Luxco's shares).

Meanwhile, the Fund is governed by a Limited Partnership Agreement (LPA). At the time Novalpina was serving as General Partner, the LPA stated that Luxembourg courts were "to have the exclusive jurisdiction to settle any disputes . . . which may arise out of or in connection with th[e] agreement." The LPA also provided for a Limited

Partnership Advisory Committee (LPAC) to advise the Fund, and at all relevant times, Langdon served as Chairman of the LPAC. The LPA also provided that in the event of Novalpina's removal, the Fund would have to pay it contractual entitlements known as the Removal Entitlement and Sponsor Commitment. The LPA stated that the total amount of the Removal Entitlement and Sponsor Commitment would be based on the value of the Fund at the time Novalpina was removed, to be determined by an independent valuer.

In late 2020, Kowski and Lueken had a falling out with Peel. At that point, Novalpina's and Treo's versions of the relevant facts begin to diverge. According to Treo, Kowski and Lueken attempted to remove Peel from management of Topco, leading the Fund's limited partners to become concerned about the Fund's stability. The limited partners then decided to remove Novalpina as General Partner; at the request of the limited partners, Novalpina called an investors' meeting to vote on its removal. Treo argues that in an effort to remain in power, Kowski and Lueken took a variety of improper steps in the run-up to the removal vote, including suspending Peel's voting rights within Topco and removing three of Novalpina's independent managers, who they replaced with allies.

These allies then allegedly caused Novalpina to exercise its power as General Partner to install them as managers of the Fund's wholly owned subsidiaries. This maneuver gave them effective control of Master Luxco. Then, according to Treo, Novalpina, "acting via Kowski, Lueken, and the newly appointed directors under their control, surreptitiously amended the articles of association for Master Luxco to require unanimity among all its shareholders . . . to approve virtually any action or decision." This provision, Treo

contends, gave Novalpina (through its less than one percent stake in Master Luxco) an effective veto over any shareholder decision of the Fund, notwithstanding its impending removal as General Partner. The day after this amendment, the Fund's limited partners voted to remove Novalpina, and several weeks later replaced it with Treo, which remains the General Partner today.

Meanwhile, in Novalpina's version of the facts, Peel was the problem Founder who devised a plan to remove Kowksi and Lueken. Peel purportedly "wanted more than his one third of the Founder[s'] economics" and, to that end, wanted to install a new General Partner than he alone controlled. Langdon allegedly secretly supported Peel's takeover attempt. Novalpina asserts that Langdon proposed to the LPAC that an associate of U.S. consulting firm BRG Asset Management LLC take over as the new General Partner. Treo was duly created as a Luxbourgish affiliate of BRG Asset Management LLC on July 30, 2021, and nominated as General Partner on August 6, 2021, twenty days after Novalpina was voted out.

Novalpina claims that, following Treo's takeover, Treo and the LPAC induced Novalpina to agree to valuation principles for payment of the Removal Entitlement and Sponsor Commitment, which Novalpina acceded to in exchange for a smooth transition in leadership despite overt breaches of the LPA by Treo and the LPAC. Novalpina now claims that this inducement was fraudulent and that, once Treo and the LPAC realized how much money was at stake, they took steps to ensure that they would never have to pay Novalpina the money it is owed. For example, Novalpina claims that the Fund sold LXO to a friend of Langdon's for €20 million less than it was worth to reduce the amount of liquidity that would be available to pay Novalpina.

Following its ouster, Novalpina filed four lawsuits in Luxembourg, "the Summons 1–4 proceedings." These lawsuits collectively seek: (1) nullification of actions taken after its removal as General Partner, (2) its reinstatement as General Partner, and/or (3) financial damages. Of particular importance here, the "Summons 4" action, which includes as defendants Treo, Langdon, and OPERF, is a merits proceeding in which Novalpina seeks reinstatement as General Partner and payment of the Removal Entitlement and Sponsor Commitment. Novalpina also represents that it is contemplating a future lawsuit against Treo and members of the LPAC (including Langdon) alleging that they fraudulently attempted to deprive Novalpina of the money it is owed.

Meanwhile, Treo has filed its own lawsuit in Luxembourg that it calls the "Veto Right Litigation." Treo and the Fund seek a court order nullifying the resolutions amending Master Luxco's articles of association to require unanimity among shareholders to approve decisions of Master Luxco, which it claims gave Novalpina—with its less than one percent interest—"a right to veto legitimate and necessary management decisions of Master Luxco, even where those decisions were supported by the holders of the remaining 99 percent interest." Treo states that this litigation "is narrowly focused and turns entirely on whether [Novalpina] abused its authority as the then-General Partner of the Fund to enact a provision for its own self-benefit and to the Fund's detriment in violation of duties owed as the General Partner."

## PROCEDURAL BACKGROUND

On January 27, 2023, Novalpina filed an ex parte petition for judicial assistance pursuant to 28 U.S.C. § 1782 in the

District of Oregon.  Novalpina sought documents from Read and Langdon "for the purpose of obtaining limited, but critical, discovery for use in connection with a foreign civil proceeding currently pending in the Commercial Chambers of the Luxembourg District Court, in which Novalpina GP is an interested person," referring to the Veto Right Litigation, "and for a contemplated claim to be filed in the same court" against Langdon, Treo, and others it believed assisted Peel.[1] Novalpina stated that it "[d]id not file this Petition in connection with" its existing lawsuits but only as a defense to the Veto Right Litigation and in support of the potential fraud claim.  Treo moved to intervene, arguing that it could "provide the Court with important context" about the relevant foreign proceedings, including "the manner in which the instant request improperly seeks discovery from 'participant[]s' in those proceedings."  Langdon and Read also moved to intervene.  The district court granted both motions.

On August 10, 2023, the district court granted the § 1782 petition.  The district court first reviewed § 1782's statutory requirements, which are that "(1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person.'" *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019)

---

[1] The same day, Novalpina filed a § 1782 petition in the Southern District of New York, seeking documents from Treo Asset Management and certain of its officers and employees for use in the same two proceedings. Judge Gardephe later granted in part and denied in part the respondents' motion to quash. *In re Novalpina Cap. Partners I GP S.À.R.L.*, 23 Misc. 25 (PGG), 2025 WL 1160854, at *33 (S.D.N.Y. Apr. 21, 2025).

(quoting 28 U.S.C. § 1782(a)).  The district court found that these requirements were easily met: Langdon and Read resided in the District of Oregon; the material sought was "for use" in defending pending litigation and in contemplated counter-litigation; and Novalpina was an "interested person" as it was currently a party to the foreign litigation and a would-be plaintiff in the future fraud suit.

Even where a petitioner meets the statutory requirements under § 1782, a district court maintains discretion to deny a petition.  Under *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), the four non-exclusive factors that govern a court's discretion are: "(1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding;' (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;' (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;' and (4) whether the discovery requests are 'unduly intrusive or burdensome.'"  *CPC Pat. Techs. Pty Ltd. v. Apple Inc.*, 119 F.4th 1126, 1129 (9th Cir. 2024) (quoting *Intel*, 542 U.S. at 264–65).  The district court found that all four factors weighed in favor of granting the petition, noting in particular that the first factor weighed in favor of Novalpina because Langdon and Read "are not parties to the proceeding for which discovery is sought."

Novalpina, Langdon, and Read subsequently negotiated a proposed protective order, partly at Treo's request.  Section 4.1 of the final protective order stated that protected material could be used or disclosed in "litigation relating to the events described in the [§ 1782 petition]."  The original language of

the draft order read "litigation relating to this Petition," but Novalpina changed the language to "relating *to the events described* in the Petition," a change with Langdon and Read accepted.

On January 24, 2024, Langdon and Read moved for the district court to enter this protective order. The version of the protective order filed that day—which was available on the docket—contained the "relating to the events" language that the parties had negotiated. The district court denied this motion on January 30, finding that the motion did not contain enough information to demonstrate good cause existed to issue the order. On February 7, Langdon and Read filed a renewed, unopposed motion setting forth supplemental information. Finding good cause, the district court then granted the protective order as necessary "to protect the confidential nature of certain information."

Shortly after the entry of the protective order, Novalpina used documents obtained from Langdon and Read in the Summons 4 litigation (in which Langdon was a defendant) and provided those documents to third parties, such as Kowski, to be used in separate litigation. Langdon and Read then refused to produce further documents until Novalpina explained why it was sharing confidential information with non-parties and using the documents in litigation outside of the Veto Right Litigation and the contemplated future fraud action. On April 10, 2024, Novalpina moved to compel. On April 24, 2024, Langdon and Read filed their opposition to the motion to compel and filed a cross-motion to amend the protective order.[2] Also on April 24, 2024, Treo filed a motion for reconsideration of the grant of the § 1782 petition

---

[2] Langdon and Read also asked for reciprocal discovery, which the district court denied and which is irrelevant to this appeal.

under Rule 60(b)(2) or, in the alternative, to amend the protective order.

On July 30, 2024, the district court granted Novalpina's motion to compel, denied Langdon and Read's motion to amend the protective order, and denied Treo's motion for reconsideration or, in the alternative, to amend the protective order.  Quoting *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017), a § 1782 case, the district court began by noting that, "[a]s a general matter, '[§] 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise.'"  Then, quoting *Glock v. Glock, Inc.*, 797 F.3d 1002, 1009 (11th Cir. 2015), another § 1782 case, the district court noted that "[n]othing prevents a party from seeking to negotiate a protective order precluding the evidence from being used in [other] litigation, particularly if the party has reason to believe that it risks exposure to [other] litigation based on the evidence produced."

Beginning with Langdon and Read's motion to modify the protective order, the district court noted that, in granting the § 1782 petition, it "did not limit the use of materials to the two proceedings identified by" Novalpina.  It further noted that, exactly as contemplated by *Glock*, Langdon and Read had negotiated a protective order at "arm's length" and that Section 4.1 was "unambiguous" in not limiting the use of protected material to the two proceedings Novalpina identified as the basis for the § 1782 petition.  The court then commented that if Langdon and Read really relied on Novalpina's representations to the district court that it only wanted the documents for use in those two proceedings, they "would not have stipulated to a protective order that plainly allows for the use of materials beyond the two proceedings

identified in the § 1782 Petition" and that their "subsequent remorse regarding [Section 4.1] does not amount to the good cause necessary for this Court to modify the Protective Order."

Turning to Treo's independent motions, the district court found insufficient evidence of Novalpina's "chicanery," *Glock*, 797 F.3d at 1009, to justify reconsideration of the grant of the § 1782 order and stated that Treo's alternate request for amendment of the protective order was denied for the same reasons as Langdon and Read's motion.

On August 5, 2024, Treo timely appealed. Langdon and Read have not filed a brief in connection with this appeal.

## STANDARD OF REVIEW

We review the denial of a motion for reconsideration for abuse of discretion. *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1100 (9th Cir. 2004). We also review the denial of a request to modify a protective order for abuse of discretion. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 472 (9th Cir. 1992). Any underlying questions of law are reviewed de novo. *Id.*

## ANALYSIS

### I. We Have Appellate Jurisdiction Over the District Court's Order

We must first determine whether we have jurisdiction over the district court's order denying Treo's motion for reconsideration and its alternate request for modification of the protective order. Although Novalpina only disputes that Treo has standing and does not challenge other jurisdictional issues, we nonetheless "briefly analyze the basis for our jurisdiction because we have an independent duty to do so."

*CPC Pat. Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 805 (9th Cir. 2022).

As a preliminary matter, we must determine whether the district court properly allowed Treo to permissively intervene.[3]  A district court "may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  We review the district court's decision to grant permissive intervention under the abuse of discretion standard.  *Beckman Indus., Inc.*, 966 F.2d at 472.

We conclude that the district court did not abuse its discretion in allowing Treo to intervene.  The documents that Novalpina sought will allegedly be used to defend against the Veto Right Litigation, which was brought by Treo, and Treo would also be one of the defendants in Novalpina's contemplated future fraud action.  Treo was in a better position than Langdon and Read to discuss the status of this foreign litigation and intervened specifically to "shed additional light" on the § 1782 factors as applied in this case.  As such, Treo's conduct was at the center of Novalpina's document request, and it asserted questions of fact and law common to that request.  Additionally, the district court considered other discretionary factors, such as delay, when determining whether to allow Treo to intervene.  Ultimately, "Rule 24 traditionally receives liberal construction in favor of applicants for intervention," and we see no reason not to

---

[3] Because only an intervenor appeals the district court's judgment, the question of intervention is jurisdictional.  *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 n.1 (9th Cir. 1995).

construe it liberally here.[4]  *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).

Next, we conclude that the district court's denial of Treo's motion for reconsideration and its alternative request for modification of the protective order were "final" and therefore appealable under 28 U.S.C. § 1291.  Although discovery orders are usually not appealable because they are interlocutory, § 1782 is unique, and we have long considered the denial or grant of § 1782 petitions to be immediately appealable.[5]  *See, e.g.*, *Khrapunov*, 931 F.3d at 931–32 (Callahan, J., concurring in the judgment and dissenting) (collecting cases); *see also In re 840 140th Ave. Ne.*, 634 F.3d 557, 565–67 (9th Cir. 2011).  Additionally, we have long considered motions to modify a protective order to be immediately appealable.  *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1129 (9th Cir. 2003); *Beckman Indus., Inc.*, 966 F.2d at 472.

Notably, we have recently clarified a major exception to the general rule that grants of § 1782 petitions are immediately appealable.  In *CPC Patent*, we found that the grant of a § 1782 petition was not yet appealable because

---

[4] Although the procedural posture of this case is unusual—intervention motions are often filed and considered only after the district court grants a § 1782 petition, *see, e.g.*, *In re Ambercroft Trading Ltd.*, No. 18-mc-80074-KAW, 2018 WL 4773187, at *1, *4 (N.D. Cal. Oct. 3, 2018); *de Leon v. Clorox Co.*, No. 19-mc-80296-DMR, 2020 WL 4584204, at *2 (N.D. Cal. Aug. 10, 2020)—we conclude that it is not inherently an abuse of discretion for a district court to allow intervention at an earlier point.

[5] Treo did not have to appeal the grant of the original § 1782 petition to appeal the denial of the motion for reconsideration.  *See, e.g.*, *Straw v. Bowen*, 866 F.2d 1167, 1171 (9th Cir. 1989).  And because Treo could have immediately appealed the former, it could immediately appeal the latter.  *See Zamani v. Carnes*, 491 F.3d 990, 994 (9th Cir. 2007).

significant aspects of the discovery were still to be determined.  *See* 119 F.4th at 1129.  The *CPC Patent* exception is not applicable here, however, because the scope of the discovery was sufficiently defined; indeed, the case underlying this appeal was closed shortly before oral argument because the parties did not anticipate any further proceedings before the district court.  All that this appeal will determine is how the discovery can be used in other proceedings moving forward.

Finally, Treo had standing before the district court to challenge the grant of the original § 1782 petition and has standing to appeal the district court's denials of its motion for reconsideration and alternative request for modification of the protective order.  Although Novalpina argues that Treo has not suffered a concrete injury, this circuit has expressly stated that "[t]he party against whom requested . . . records are to be used has standing to challenge the validity of the order . . . to produce the records."  *In re Request for Jud. Assistance from Seoul Dist. Crim. Ct.*, 555 F.2d 720, 723 (9th Cir. 1977).  The crux of this dispute is that the documents in question were intended to be, and *are currently being*, used in litigation against Treo.  Nothing more is required for Treo to have standing.

## II. Documents Produced "For Use" Under § 1782 May Be Used in Proceedings Other Than Those Identified in the Petition

Underlying this appeal is a threshold legal question that we have not yet had the opportunity to answer: can documents produced "for use" in specific foreign proceedings under § 1782 be used in proceedings other than those identified in the § 1782 petition?  The district court concluded that the answer was yes, relying on the Eleventh

Circuit's analysis in *Glock* and the Second Circuit's analysis in *In Re Accent Delight*. We agree with the district court and our sister circuits and hold that documents produced "for use" in certain proceedings may be used in other proceedings as well absent an order to the contrary by the § 1782 district court.[6]

As we must for all questions of statutory interpretation, we begin with the language of the statute itself. *See Cheneau v. Garland*, 997 F.3d 916, 919 (9th Cir. 2021) (en banc). In relevant part, § 1782 provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing

---

[6] *Glock* concerned documents produced for use in foreign proceedings that were subsequently used in U.S. civil litigation, while *In re Accent Delight* concerned documents produced for use in one set of foreign proceedings that were later used in other foreign proceedings. *See Glock*, 797 F.3d at 1010; *In re Accent Delight*, 869 F.3d at 133. As the Second Circuit recognized, the same logic largely applies to both circumstances. *In re Accent Delight*, 869 F.3d at 135.

> produced, in accordance with the Federal
> Rules of Civil Procedure.

28 U.S.C. § 1782(a).  As our sister circuits have recognized, this text "reveals no great insights."  *In re Accent Delight*, 869 F.3d at 133.  On the one hand, there is nothing in the language of § 1782 that limits the use of discovery produced under the statute to only the identified proceedings.  *Glock*, 797 F.3d at 1006.  On the other hand, however, "neither did Congress include a sentence in the statute providing that once discovery is lawfully received under § 1782, it may be used for other legal purposes."  *Id.*  Rather, this text merely sets out § 1782's basic requirements and leaves the procedure for obtaining documents or testimony to the district courts.

The legislative history does not provide a definitive answer as to the intended scope of discovery use either.  As our sister circuits have explained, there is nothing in the legislative materials accompanying the law that suggests Congress ever contemplated the precise question at issue here.  *See id.* at 1007; *In re Accent Delight*, 869 F.3d at 134. However, as the Supreme Court detailed in *Intel*, the history of § 1782 is a history of continuous expansion—rather than retraction—of the kind of assistance federal courts can provide to foreign tribunals.  542 U.S. at 247–49.  As the *Intel* Court explained, the enactment of § 1782 in 1948 "substantially broadened" the scope of assistance that federal courts could provide to proceedings abroad, and in 1964, Congress expanded § 1782 to cover quasi-judicial proceedings as well.  *Id.* at 247–48.  Although the Senate Report accompanying the 1964 amendment did not address the use of documents in other proceedings, it did emphasize that the district court maintained "discretion" to "refuse to

issue an order" or "impose conditions it deems desirable." *In re Accent Delight*, 869 F.3d at 134 (quoting S. Rep. No. 88-1580 (1964), as reprinted in 1964 U.S.C.C.A.N. 3782, 3788).

As such, although the text and history of § 1782 do not provide conclusive answers as to the scope of potential document use, they do at least "demonstrate that Section 1782 entrusts to the district courts many decisions about the manner in which discovery under the statute is produced, handled, and used." *Id.* Therefore, we turn to the analogy of domestic litigation, where discovery also relies heavily on a district court's discretion. Notably, like § 1782, the Rules of Civil Procedure do not expressly restrict discovery obtained from a defendant in one case from being used in a wholly separate lawsuit. *See* Fed. R. Civ. P. 26. Rather, district courts maintain discretion to limit the scope of discovery. Fed. R. Civ. P. 26(b). Additionally, just as they can for discovery obtained via § 1782, district courts can enter protective orders for discovery obtained in domestic litigation that prohibit the use of that discovery in other proceedings. Fed. R. Civ. P. 26(c). Critically, the availability of "common restrictions" like protective orders would be "entirely superfluous" if § 1782 prohibited successful applicants from using the documents in other proceedings. *In re Accent Delight*, 869 F.3d at 135.

We therefore see no principled reason why documents obtained "for use" in certain proceedings under § 1782 cannot be used in other proceedings not identified in the § 1782 petition. Just as they do for domestic discovery, district courts maintain discretion over the entire § 1782 process, and as needed (and as occurred here) may enter appropriate protective orders. Certainly, we agree with our sister circuits that district courts—as they presumably

already do—should carefully review § 1782 petitions to ensure that applicants are not using the petitions as a "sham" or "ruse" for obtaining discovery for other proceedings in which they could not otherwise obtain discovery. *See id.*; *Glock*, 797 F.3d at 1009. If such evidence exists, it might support denying a petition or granting a motion to reconsider or might provide good cause for entering a protective order. *See In re Accent Delight*, 869 F.3d at 135. For the reasons explained in Parts III and IV, however, we find that in this case, the district court did not abuse its discretion in refusing to grant Treo's motion to reconsider or its alternative request to modify the protective order.

Finally, we disagree with Treo's assertion that such a holding conflicts with our prior precedents. Specifically, Treo seemingly reads *Khrapunov* to require an express assessment of the statutory § 1782 and discretionary *Intel* factors for each foreign proceeding in which the discovery is used. But *Khrapunov* concerned a § 1782 petition based on proceedings in England in which the English courts issued final denials of the appellee's applications while the appeal related to the grant of the appellee's § 1782 petition was still pending in this court. *Khrapunov*, 931 F.3d at 924. As a result, we remanded back to the district court to conduct additional fact-finding about the nature of the English proceedings, including whether those proceedings could be reopened, to determine whether the second § 1782 statutory requirement—that the documents be produced for use in a foreign "proceeding"—was still met. *Id.* at 925–26. *Khrapunov* therefore only addressed the issue of whether there must be at least one clear "proceeding" underlying the § 1782 petition, not whether documents produced for one (or more) qualified "proceedings" may subsequently be used in other litigation.

We therefore join the Second and Eleventh Circuits and hold that documents produced "for use" under § 1782 for certain proceedings may be used in other proceedings absent an order to the contrary by the § 1782 district court. As such, the district court did not commit a threshold legal error by allowing documents produced for use in the Veto Right Litigation and Novalpina's future fraud lawsuit to be used in other foreign proceedings. And, for the reasons explained below, it did not otherwise abuse its discretion in denying Treo's motion for reconsideration and alternative request for modification of the protective order.

## III.   The District Court Did Not Abuse Its Discretion in Denying Treo's Motion for Reconsideration

On appeal, Treo argues that the district court abused its discretion in denying its motion for reconsideration by applying the wrong legal standard for Rule 60(b)(2) and by failing to recognize, based on the evidence in the record, that it had been misled by Novalpina. Both arguments are unavailing.

As to the legal argument, Treo argues that when the district court stated that it was denying Treo's motion for reconsideration because it did not find evidence of Novalpina's "chicanery," it failed to consider the appropriate factors under Rule 60(b)(2) and mistakenly assumed that evidence of "chicanery" was required for relief under Rule 60(b)(2). Under Rule 60(b)(2), a district court may grant a party relief from a final judgment, but "the movant must show the evidence (1) existed at the time of [the judgment], (2) could not have been discovered through due diligence, and (3) was 'of such magnitude that production of it earlier would have been likely to change the disposition of the case.'" *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th

Cir. 1990) (quoting *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 211 (9th Cir. 1987)).  A motion for reconsideration is an "extraordinary remedy" that "should not be granted, absent highly unusual circumstances." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (first quoting 12 Moore's Federal Practice § 59.30[4] (3d ed. 2000); and then quoting *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

However, the district court did not apply the wrong legal standard.  Earlier in its order, the district court had specifically laid out the three Rule 60(b)(2) factors.  The district court then acknowledged, quoting *Carroll*, that a motion for reconsideration is an "extraordinary remedy that 'should not be granted, absent highly unusual circumstances.'"  Notably, although Treo alleges that the district court erroneously denied Treo's motion because it improperly found that Treo had not provided evidence of Novalpina's "chicanery," the district court's full sentence reads that Treo had not provided evidence of "chicanery . . . *to justify such extraordinary relief*."  In so stating, the district court was clearly referencing the legal standards it had set out earlier and implicitly holding that, even if Treo had met the three prongs of Rule 60(b)(2), the district court would not exercise its discretion to grant relief. We find no error of law and do not require the district court to have explained its reasoning further.

Moreover, the district court did not require evidence of "chicanery" as an independent legal standard, as Treo alleges.  Before the district court, Treo expressly framed its new evidence under Rule 60(b)(2)'s first prong as evidence of "chicanery" per *Glock*.  Indeed, even on appeal, Treo continues to frame its new evidence as evidence of Novalpina's "improper efforts to circumvent the laws and

courts of the forum jurisdiction," thereby again arguing that its new evidence is simply evidence of Novalpina's misconduct. The district court solely discussed "chicanery" because that is the only kind of new evidence that Treo provided.[7] We refuse to find a legal error simply because Treo is upset that the district court accurately characterized its own arguments.

Assuming then that Treo's evidence of Novalpina's chicanery qualifies as new evidence that could not be discovered with "due diligence,"[8] we conclude Treo has not provided evidence of Novalpina's "chicanery" such that it was an abuse of discretion for the court not to grant the motion for reconsideration. Treo argues that "the record presented to the district court not only established that it had been misled in deciding to grant the Petition, but that Petitioner's reliance on the two proceedings identified had

[7] To the extent that Treo also seems to argue that its new evidence was also evidence of changed factual circumstances under *Khrapunov*, that argument is both forfeited and unavailing. As explained above, *Khrapunov* merely requires that a district court re-evaluate the statutory § 1782 and discretionary *Intel* factors when necessary to ensure that at least one qualified proceeding underlies the grant of the § 1782 petition.

[8] Notably, it is not clear that Treo's new evidence even qualifies as new evidence that this court can consider under Rule 60(b)(2) because Treo's new evidence is—in its own framing—evidence of "*subsequent developments*" indicating that Novalpina lied to the district court. Under this court's precedent, new evidence must have existed "at the time" of the original decision. *Jones*, 921 F.2d at 878. We have repeatedly explained that "evidence of events occurring after the trial is not newly discovered evidence within the meaning of the rules." *Corex Corp. v. United States*, 638 F.2d 119, 121 (9th Cir. 1981) (collecting cases), *abrogated on other grounds by Falk v. Allen*, 739 F.2d 461 (9th Cir. 1984). However, because Treo's argument fails on other grounds, we assume without deciding that it has presented qualifying new evidence.

been largely pretextual." Treo alleges that Novalpina has made "exceedingly limited use of the discovery sought in the Veto Right Litigation," has not yet filed the future fraud claim, and has made "*significant* use" of the documents in other proceedings, all of which should have demonstrated to the district court that Novalpina had engaged in the kind of "chicanery" that warrants relief.

However, the district court is in the best position to determine if it has been misled. *See Glock*, 797 F.3d at 1009 ("When subsequent challenges arise, the § 1782 court, having entered the § 1782 order and, if applicable, the governing protective order, is in the best position to quickly evaluate allegations of improper use of § 1782 and the meaning of any governing protective order."). Treo has not climbed the exceedingly steep hill required to show that the district court abused its discretion when it found that, although Treo may not have understood the potential scope of document use under § 1782, the court itself always did.

First, for the reasons discussed above, there is nothing inherently improper about documents produced "for use" in certain proceedings under § 1782 from being used in other proceedings. Second, the district court meaningfully considered the relevant evidence of Novalpina's purported misconduct, as demonstrated by the fact that it refused to award costs to Novalpina for Langdon and Read's noncompliance with the subpoenas. Although the district court ultimately rejected their argument—which rested on the same evidence of "chicanery" as Treo's motion—it nonetheless found that Langdon and Read were "substantially justified" in their noncompliance. Only after considering all this evidence did the district court also determine that Treo had not provided evidence of Novalpina's "chicanery" sufficient to justify granting the

motion. Third, although Treo argues that Novalpina's use of the documents in the Veto Right Litigation has been "very limited," it does still acknowledge that the documents have been used in that proceeding. And the Southern District of New York did not rule on Treo's motion to quash Novalpina's similar § 1782 petition against Treo Asset Management until shortly before oral argument in this case, which explains why the filing of Novalpina's future fraud proceeding had not yet occurred at the time of the district court's ruling. *Novalpina*, 2025 WL 1160854.

Ultimately, given the district court's acknowledgement of the relevant evidence, the proper use of the discovery in the Veto Right Litigation, and that the district court is, of course, in the best position to determine whether it was misled, we cannot say that the district court's denial of Treo's motion for reconsideration was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1110 (9th Cir. 2011) (cleaned up) (quoting *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010)).

## IV.   The District Court Did Not Abuse Its Discretion in Denying Treo's Request to Modify the Protective Order

Treo also argues that, alternatively, the district court abused its discretion in denying its motion to modify the protective order. Treo faults the district court both for not making any findings that the modifications sought by Treo were unwarranted and for not providing independent consideration to Treo's interest in seeing the order modified.

We again conclude that the district court did not abuse its discretion.

First, the district court extensively explained why it was denying Langdon and Read's motion to modify the protective order, which asked for the same modifications that Treo's motion did.  The district court explained that its order granting the § 1782 petition did not limit the use of documents to only the Veto Right Litigation and future fraud proceeding, and that if Langdon and Read really relied on Novalpina's representations that the documents would not be used in other litigation, they "would not have stipulated to a protective order that plainly allows for the use of materials beyond" those two proceedings.  The district court did not need to copy and paste this analysis into its section denying Treo's identical request.  The district court made clear its analysis was the same for both parties and so such duplication would be unnecessary.

Second, Treo's argument that the district court abused its discretion by failing to consider its individual harms and circumstances fails because—contrary to its assertions otherwise—Treo is indeed similarly situated to Langdon and Read.  Specifically, Treo argues that the district court's conclusion that Langdon and Read's "subsequent remorse" regarding Section 4.1 "does not amount to the good cause necessary" to amend the protective order should not have applied to Treo, because Treo played no role in negotiating the protective order.  But the protective order was negotiated in part on Treo's behalf, and the protective order was available on the docket for weeks before it went into effect.[9]

---

[9] The protective order was on the docket—but not yet in effect—in the period between Langdon and Read's initial filing of the protective order,

Like Langdon and Read, Treo easily qualifies as a sophisticated party, so the district court's conclusion that Langdon and Read's "subsequent remorse" does not provide good cause equally applies to Treo.

Finally, Treo's additional arguments that the district court abused its discretion in denying its motion to modify the protective order because it (1) erroneously allowed documents produced for use in certain proceedings under § 1782 to be used in other proceedings and (2) failed to recognize that it had been misled by Novalpina as to the use of the discovery, are rejected for the reasons explained above.

**AFFIRMED.**

---

which the district court rejected, and the district court's ultimate entry of the protective order.